IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-2028-CNS-GPG

JAMES JARVIS,

    Plaintiff,

vs.

CORRECT CARE SOLUTIONS, LLC, WELLPATH, LLC, BOARD OF COUNTY COMMISSIONERS OF MESA COUNTY, SHERIFF TODD ROWELL, LORI MCLAUGHLIN, KURTIS HOLMES, ALISSA EMBREE-NICHOLSON, RENEE WORKMAN, HEATHER MARTINES, HEATHER STANFORD, SHAWNA ROCHELLE CHRISTENSEN, NICKOLE CHANTEL CROOMES, DENISE MCALLISTER, KATELYN STULTS,,

    Defendants.

_____

**REPORTER'S TRANSCRIPT**
Pretrial Conference
_____

    Proceedings before the HONORABLE CHARLOTTE N. SWEENEY, Judge, United States District Court for the District of Colorado, commenced at 8:27 a.m., on the 20th day of October, 2022, United States Courthouse, Denver, Colorado.

1   Proceeding Recorded by Mechanical Stenography, Transcription
2   Produced via Computer by Tamara Hoffschildt, 901 19th Street, Room A251, Denver, Colorado, 80294, (303) 292-1088

3                           **APPEARANCES**

4         Cheryl Trine, appearing for the Plaintiff.

5         Daniel Struck and Andrew Clauss, appearing for the
6   Defendants.

7                         *   *   *   *   *

8                          **PROCEEDINGS**

9      (In open court at 8:31 a.m.)

10         *THE COURT:*  Good morning.  Please take a seat.  All
11   right.  Thank you for being early.  I love early.  We are here
12   in Jarvis v Correct Care Solutions, et al, 20-cv-2028, here on
13   a final pretrial conference.

14         May I have entries of appearance?

15         *MS. TRINE:*  This is Cheryl Trine, for the Plaintiff,
16   James Jarvis.

17         *THE COURT:*  Good morning.

18         *MR. CLAUSS:*  I'm Daniel Struck, for the Wellpath
19   Defendants.

20         *THE COURT:*  Good morning,.

21         *MR. STRUCK:*  And Andrew Clauss, for the two Mesa
22   County Defendants.

23         *THE COURT:*  Got it.  All right.  Before we go through
24   the proposed pretrial order, I did want to turn to the one
25   pending motion, which is Plaintiff's Motion To Strike Portions

1  Of The Expert Report of Thomas... I'm not sure how to say his
2  name.  Fowlkes?  Is that close enough?  That's **ECF Number 127**.
3  Largely, for the reasons set forth in plaintiff's brief, the
4  Court is granting that motion, as detailed in plaintiff's
5  motion on pages 13 through 15.  The following opinions will be
6  excluded.  Opinions on cause of the initial stroke on 7-25-18,
7  and opinions on defendant's conduct between 7-25 and 7-31, with
8  respect to whether or not that conduct caused the injuries to
9  the plaintiff.
10          The Court finds that Dr. Fowlkes appears to be a
11 standard-of-care expert, has no particular expertise in
12 neurology or strokes, causation of strokes, treatment of
13 strokes, et cetera, and therefore, the Court is granting that
14 motion.
15          Any further questions on that before we move to the
16 pretrial order?
17          *MS. TRINE:*  No.  Thank you, Your Honor.
18          *MR. CLAUSS:*  No, Your Honor.
19          *THE COURT:*  All right.  Turning to the pretrial order,
20 we're going to go through it, but -- and then I'm going to have
21 you resubmit it.  It's probably -- I do not blame either party.
22 In this -- in this district, pretrial conferences have become
23 somewhat... I don't know what the right word is.  Just kind of
24 going through the motions.  I'm trying to change that a bit,
25 and I would really like my pretrial orders to be trial ready,

1  and it's clear to me this one isn't trial ready, which is fine,
2  but we're going to go through it and talk about how I would
3  like it modified to really demonstrate that both parties are
4  prepared to go to trial.
5  　　　　　So the first thing, in terms of claims and defenses,
6  I'm not going to have you redo them. I would like you to take
7  a look at them. They are a little long, a little over what the
8  instructions call for, which is really a summary of the facts,
9  and then a list of the claims and the relief. The claims and
10 relief are fine, but the facts are a little long.
11 　　　　　In terms of the defendant's defenses, however, Mesa
12 County's were fine, CCS. I have a couple questions on the --
13 it looks to me like you have listed the affirmative defenses
14 out, and I wanted to talk about a couple of those, in
15 particular. Number four, where you are talking about
16 comparative negligence, tell me what that is about?
17 　　　　　*MR. CLAUSS:* Well, comparative negligence with respect
18 to Mr. Jarvis' actions?
19 　　　　　*THE COURT:* Yes.
20 　　　　　*MR. CLAUSS:* Yes. Well, he -- one of the allegations,
21 for example, is that he wasn't provided aspirin. He never told
22 anybody that he needed aspirin. One of the allegations. Also,
23 we alleged that he refused his Losinopril on several occasions,
24 so that's, kind of, the basis for that.
25 　　　　　*THE COURT:* Okay. This may be related, but number 13,

1  the voluntary assumption of a risk; what is that about?
2          *MR. CLAUSS:* That's the same.
3          *THE COURT:* Okay. Okay. You leave those in, but what
4  I do want taken out is on page 14, after number 14, where you
5  are incorporating all affirmative defenses set forth in the
6  answer. I didn't go back and compare. My guess is you have
7  listed them all. So, regardless, either way, you include them
8  here or don't, but we're not going to be incorporating anything
9  in the answer. This document is going to govern going forward.
10 So anything you want in it, needs to be in it.
11         *MR. CLAUSS:* Okay.
12         *THE COURT:* With respect to the stipulations, on page
13 14, I would encourage you all to work on -- sorry.
14         *MR. STRUCK:* Excuse me, Your Honor. Could I ask a
15 quick question?
16         *THE COURT:* Yes.
17         *MR. STRUCK:* The Mesa defendants, at the end of their
18 section, we also incorporated our affirmative defenses.
19         *THE COURT:* Okay.
20         *MR. STRUCK:* It sounds like you don't want us to do
21 that. Would you like us to take that out and actually list any
22 that would apply?
23         *THE COURT:* Definitely.
24         *MR. STRUCK:* Okay.
25         *THE COURT:* And if they're the same -- I just didn't

1  have time to go back and look.  If they're the same as CCS, you
2  could certainly say they are the same as CCS.  If they are
3  different, please list them out.
4           *MR. STRUCK:*  Okay.  Excellent.  Sorry to interrupt.
5           *THE COURT:*  No.  I appreciate that.  On stipulations,
6  it seems to me, at least in ruling on the summary judgment
7  motion, and looking at the file, there could be more
8  stipulations reached.  I just encourage you to do that.  You
9  don't need do it by the time you resubmit the pretrial order,
10 but as we move closer to trial, I would like to give the jury
11 an instruction on what's stipulated to, and I think there's a
12 lot more that all of you could agree to, that we could give the
13 jury to give them a head start here.
14           The pending motions, you can modify that, in light of
15 my ruling today, in terms of number one, on page 14.
16           On page 15, let's talk a little bit about motions in
17 limine, which will be due in accordance with my trial
18 procedures.  I believe it's 14 days before the trial-prep
19 conference, which has not yet been set, but can both sides give
20 me an idea of what you're thinking of filing right now?  You
21 may or may not know, but if you do, would you let me know?
22          *MS. TRINE:*  Your Honor, we -- the plaintiff plans to
23 file a motion in limine regarding his criminal convictions that
24 he has been -- he pled guilty to child-sexual abuse, and that
25 the fact of that is extremely prejudicial.

1     *THE COURT:* Okay. And on the defendant's side, either
2  of you plan to file motions in limine?
3     *MR. CLAUSS:* We do, and I apologize, I wasn't prepared
4  to tell you all of the motions in limine. I do know, there --
5  for example, in their second amended complaint, I think from
6  paragraph ... 74 to 95, there are a myriad of allegations
7  regarding other cases involving Wellpath. I don't think we
8  want to get into a mini trial of 20 other cases. These are all
9  just allegations that are in the Complaint, which we dispute.
10 So we're going to be filing a motion in limine with respect to
11 that.
12    *THE COURT:* Okay. Let me ask you, on that, in terms
13 of the discovery that was done, was there much discovery done
14 on those other allegations? Or were they just simply listed in
15 the Complaint?
16    *MS. TRINE:* Your Honor, they were just simply listed
17 in the Complaint, and we would probably agree with that.
18    *THE COURT:* Okay. Got it. Good. Any others, on
19 behalf of either defendants?
20    *MR. STRUCK:* Your Honor, we plan to file various
21 motions in limine, generally. I think what we're going to try
22 do is seek to preclude evidence that would relate to any of
23 these direct claims against Mesa County, that have now been
24 dismissed, so that's the gist of what we will be doing.
25    *THE COURT:* Okay. It sounds like, just from listening

1  to the defendants' motions in limine, that much agreement could
2  be reached on those issues, and eliminate the need to file one.
3     *MR. CLAUSS:* Yeah.  We will get together with counsel,
4  and go through a list and see what we can we can do.
5     *THE COURT:* Perfect.
6     *MR. CLAUSS:* I don't want her to have to file a
7  motion, if I'm going to agree to it.
8     *THE COURT:* Yeah.  And I will give you a preliminary
9  hint on the plaintiff's anticipated motion, that will be
10 granted, if it's needed to be filed.  I don't think what he was
11 charged with and convicted of is relevant, at all, to this
12 case, and that will be granted.
13     So if you need to file -- if you still disagree and
14 want to get it on the record, that's fine, but I can tell you,
15 right now, that's what will happen.
16     With respect to the plaintiff's request on this
17 indirect liability issue, and I am not exactly sure what the
18 plaintiffs are requesting on that, so maybe if you could
19 explain, Ms. Trine.
20     *MS. TRINE:* I didn't explain that very well.  What I'm
21 thinking is that because there are two defendants, that we have
22 equal time, for example, with voir dire, and I know you don't
23 set a time limit on that for our portions and openings,
24 closings, and then a concern about just time of trial.  If the
25 cross-exams are repetitive, you know?  I don't know how you

1  would even deal with that, but I just wanted to raise that as a
2  concern.
3       *THE COURT:*  Okay.  Well, we will probably deal with
4  that as we get closer and in more detail with the trial-prep
5  conference.  You all are experienced litigators, I think you
6  know a jury does not appreciate repetitiveness.
7       *MR. CLAUSS:*  Yeah, and we will get together.  We're
8  not going to repeat testimony.  I don't want to get the jury
9  upset.
10      *THE COURT:*  Okay.  And we can -- we can detail that
11 more, later, because I just think it's a little early, in terms
12 of discussing that with any meaningful -- in any meaningful
13 way.
14      The one thing I also want you to think about, that
15 is -- and again, I don't need an answer today, but at the
16 pretrial prep conference I will want to talk about this, is
17 this jury instructions on the issue.  What are we instructing
18 the jury about Mesa County?  Do you both agree it's basically a
19 question of law, should the jury find for the plaintiff,
20 against CCS; is that something that the Court just then
21 automatically enters or do you want a jury instruction going to
22 the jury about this indirect liability theory?  So think about
23 that, and we will talk about that as we get closer to trial.
24      The witness and exhibit lists, frankly, are a bit of a
25 mess.  Again, I think that's because you are used to dumping

1   everything in, in a pretrial order, and then working,
2   legitimately, to pare that down in prep for trial.  In the
3   future, I would like that done earlier and in this version.  So
4   to the extent you can, and I am going to give you two weeks to
5   redo this, to the extent that you can pare some of this down.
6   I don't understand why the plaintiff has no will-call
7   witnesses, that's virtually impossible.
8          So let's think about who we're actually calling, move
9   some of them off the may calls, so we can have a sense of what
10  we're looking at here.  You know, I think the plaintiff has
11  listed 20 experts, the defense has listed at least 13, that
12  just can't happen here.  So we have got to talk about who we're
13  calling, for how long, and it doesn't look like there's been
14  any meaningful consideration of who we really need here.
15         So, I just encourage you to try and pare this down, to
16  submit it in two weeks.  Obviously, it will be pared down
17  further as we get closer.  I don't want to see things like
18  26(a)(1) disclosures, all discovery responses, an entire
19  medical file that's not needed and that's not going to be
20  admitted.  So to the extent that you can get on some of this
21  and eliminate a lot of unnecessary exhibits, that would be
22  terrific.
23         I will say, CCS, I think you had about 80 exhibits.
24  They were more specific in certain pages, and that's more what
25  I would expect to see.  Obviously, as we move forward, my trial

1  procedures call for joint exhibits.  You don't need to do that
2  for this.  In the future, you may want to, just because it will
3  pare down your trial prep, but you don't need do that when you
4  resubmit, that will be for the trial prep conference, but keep
5  that in mind as you are working on that.
6         With respect to section eight on discovery, I'm just
7  going to assume the defendants are requesting a follow-up
8  deposition of the plaintiff, that will be denied, but what I
9  will do, is the plaintiff is ordered to provide an update on
10 medical records, damages assessments, any further expert
11 reports, which there probably should not be, I don't know, but
12 within 30 days of today, and then again two weeks before the
13 trial date.
14        Let's see, settlement, we are going to skip for a
15 minute, section 10.  We will go to section 12, effect of the
16 pretrial order.  If you can take out the last two or three
17 sentences there, and leave it as is, in the Court's standard
18 form, so really starting with, *The parties reserve the right to*
19 *modify*, from there to the end that really doesn't belong in the
20 effect of the pretrial order, that's really just kind of
21 procedural, technical matters on exhibits.  You don't need to
22 have that anywhere in here, actually.  I understand the parties
23 are going to modify exhibits and witness lists as trial
24 approaches, that's just fine.
25        Any agreement -- I think my procedures cover

1   demonstrative exhibits, but at any rate, let's end section 12,
2   about eight lines down with pleadings.
3       You have all estimated trial at ten days.  Under my
4   procedures, if you think a trial is going to go longer than a
5   week, there's supposed to be some articulation of
6   justification.  While I anticipate I know what it is, can I
7   hear from each side, on why you think you need ten days?
8       *MS. TRINE:*  Yes, Your Honor.  I believe we need ten
9   days because there are five individual witnesses -- I mean
10  defendants, and two entity defendants.  We have five experts,
11  they have two experts, and there will be some -- and I am
12  talking about retained experts.  There will be some
13  medical-treater experts, as well, at least -- on our side, at
14  least two, and then a few lay witnesses, the plaintiff, and the
15  plaintiff's girlfriend, and I think we're really going to be
16  cramming it in to get it into ten days.
17      *THE COURT:*  Okay.  How about on the defense side?
18      *MR. CLAUSS:*  Yeah.  I agree with counsel's assessment.
19  This seems like a ten-day trial to me, and that's ambitious.
20      *THE COURT:*  Anything further?
21      *MR. STRUCK:*  I agree too, Your Honor.  I would love to
22  pare it down.  My list is very short, but I know Ms. Trine is
23  going to have a lot of evidence to put on, so I'm fine with the
24  ten days.
25      *THE COURT:*  Okay.  Well, we're going to set it --

1  here's what I would say, I feel real uncomfortable asking a
2  jury to commit to three weeks, so what we're going to do is
3  plan on testimony and closings wrapping up on day nine, so the
4  jury has a full Friday, basically, to deliberate.  So as we --
5  at the trial prep conference we will talk about that in more
6  detail, in terms of how we're dividing up time, et cetera, but
7  I do not believe this is a case that a jury would need to come
8  back for three weeks on.  If they choose to deliberate into
9  week three, that's on them, but it's a tall order asking a jury
10 for two weeks anyway, so that's what we're going to do.
11         I am looking at the week of March 13th and March 20th,
12 for this trial.
13         *MR. CLAUSS:*  Your Honor, I start a trial in New Mexico
14 on March 20th.
15         *THE COURT:*  And what's the status of that?  Are there
16 pending motions?  Is that a first setting?
17         *MR. CLAUSS:*  This is a first setting, in New Mexico.
18 They stack them, so it's possible we could get bumped for a
19 criminal trial, but this is isn't a case we're going to get out
20 on a motion, and it will likely not settle, this will be tried.
21         *THE COURT:*  And --
22         *MR. CLAUSS:*  I'm also completing a trial.  I can't
23 remember the date, but first date you gave, but I have another
24 trial that's in New Mexico, that's definitely going to trial,
25 that's going to be completed on March 8th, and I start a trial

1   April 3rd, in Tucson, Arizona, that's going to last the entire
2   month.  I actually, I -- just for Your Honor's edification, I
3   have this list here, I'm open for trial on May 29th to June
4   9th, and August 14th, to 25th.
5           *THE COURT:*  Ms. Trine, what's your availability look
6   like?
7           *MS. TRINE:*  I am available.  So ... I am pretty much
8   available this spring for trial, and I can definitely do those
9   dates that he just mentioned, so.
10          *THE COURTROOM DEPUTY:*  May 29th is Memorial Day.
11          *MR. CLAUSS:*  Well, then May 30th.
12          *THE COURT:*  Julie, I want to get a calendar up here.
13  I think I can get it here.  Let me see.
14          *MR. STRUCK:*  Your Honor, Mesa is a available to both
15  of the blocks indicated by counsel, the May and the August.
16          *THE COURT:*  Julie, is that open, the May date?
17          *THE COURTROOM DEPUTY:*  It is, Your Honor.  It would be
18  a nine-day, not a ten-day setting, because Memorial Day is on
19  the 29th.
20          *THE COURT:*  Gotcha.
21          *THE COURTROOM DEPUTY:*  Can you minimize and press
22  remote --
23          *THE COURT:*  I think -- no, let me see.  It just ...
24  it's up, there's just no information.  I have no say.  I'm open
25  from here to the end of time, apparently.

1  *MR. CLAUSS:*  I'm actually open the 10th of June.  I'm
2  sorry.
3  *THE COURT:*  All right.  Let's -- I can at least see
4  the month, so I know the dates.  All right.  So, we're looking
5  at -- so Memorial Day is the 29th, looking at starting the 30th
6  ... and what -- I forgot what you said about early May.  What
7  was the problem early May?
8  *MR. CLAUSS:*  I have a trial in New Mexico -- actually
9  no, I'm sorry, in Las Vegas, that is definitely going, because
10 it just got reset.  It was May 8th through May 16th.
11 *THE COURT:*  All right.  Well, let's go ahead and take
12 this May 30th block.  I'm just going to set it for the two
13 weeks.  So, through June 9th.  And if need be, the jury could
14 deliberate into the next week, but we're going to talk about
15 how we can streamline, in the hopes that we could get them
16 deliberating on June 8th.
17         And then, what we will do ... let me just back this
18 up.  I would rather do a trial prep conference a bit earlier.
19 What about May 5th, for a trial prep conference?
20 *MS. TRINE:*  That works for the plaintiff.  Thank you,
21 Your Honor.
22 *MR. CLAUSS:*  The only thing on my calendar is Cinco de
23 Mayo.
24 *THE COURT:*  Okay.  We will do it early, so people can
25 leave early and go have a Margarita.  How about 9; is that

1    okay?

2             *THE COURTROOM DEPUTY:*  Yes, Your Honor.

3             *THE COURT:*  Nine, on May 5th will be the pretrial prep
4    conference.  I know -- you both indicated that you have read my
5    procedures.  You have the nice little chart, hoping to aid you,
6    so if you can make sure and comply with that, it will
7    streamline the process.  Again, please talk about motions in
8    limine.  It doesn't sound like we've got a lot of issues that
9    we could work through.  The more we can do in advance, the
10   quicker the trial will go, and the jury will be much happier
11   that way.

12            Let's go back to settlement.  The quick answer to the
13   Judge Hegarty suggestion is no, that's really not -- that's not
14   allowed anymore.  There's rare occasions where that has been
15   allowed.  It's not really allowed.  I would suggest, given
16   what's at stake here, it is worth a private mediation, that
17   would be my suggestion on that.

18            Judge Gallagher could do one.  He is in Grand
19   Junction.  I would certainly suggest you do it in-person
20   mediation, if you are going to do one at all, so I would
21   recommend private mediation.  If you do that, obviously, my
22   suggestion is well before the trial prep conference, so if
23   there's any way to resolve this, you are not adding more time
24   and money to both sides' case by then.  But otherwise we're not
25   able to, kind of, handpick the magistrate judges on who is

```
 1  going to do a settlement conference.
 2          MR. CLAUSS:  But you are not saying that the
 3  magistrate judges don't do settlement conferences, you are just
 4  saying we can't say we want you to pick this judge?
 5          THE COURT:  Correct.
 6          MR. CLAUSS:  Okay.  Well, we -- at least as far as the
 7  Wellpath defendants we wouldn't object to at least making an
 8  attempt with a magistrate judge, whomever we might end up with.
 9          THE COURT:  Well, you would end up with Judge
10  Gallagher, because that's who is on your case.  So what I would
11  say is I would then direct you, if you are both in agreement on
12  that, to contact his chambers, and we will put a note in the
13  record that we've referred it for a settlement conference, so
14  he has full authority do that.
15          Again, it's a little tricky since he is in Grand
16  Junction, but he does schedule days down there, so that might
17  be an option.  So I would do that sooner rather than later, if
18  you hope to accomplish that any time soon.
19          With that being said, that is all I had.  Are there
20  any other issues that you all want to bring to the Court's
21  attention?
22          MS. TRINE:  No, Your Honor.  Thank you.
23          THE COURT:  Defendants?
24          MR. CLAUSS:  No, Your Honor.
25          THE COURT:  Okay.  Perfect.  So we will expect a new
```

1  draft in two weeks.  The other deadlines, as we set forth on
2  the supplemental disclosures, if there's any issues with that,
3  just let me know, otherwise we will --
4        *MR. CLAUSS:*  One thing I did want to ask on this.  All
5  three parties kind of had different -- the way that we did the
6  witness testimony is -- was there one of the three that you
7  preferred?
8        *THE COURT:*  I like, I believe it was, yours, I think,
9  that estimates time.
10       *MR. CLAUSS:*  Yes.
11       *THE COURT:*  I think the sooner we're talking about how
12  long people are going to be on the stand, the better.  It just
13  helps us plan and kind of helps both of you -- or all three of
14  you plan.  So if you can start doing that, and again plaintiff,
15  please move some folks to say *will call*.
16       *MS. TRINE:*  Okay.
17       *MR. CLAUSS:*  Thank you.
18       *THE COURT:*  Okay.  Thank you both -- or thank all
19  three of you, and we will see you ... and let me -- before I
20  go, let me just add, if the settlement talks, if you wouldn't
21  mind sending a joint status report, after that, to me, just to
22  let me know we did it, it failed, or we're making progress that
23  will help us plan as well.
24       *MR. CLAUSS:*  Okay.
25       *THE COURT:*  Thank you.

1    *THE COURTROOM DEPUTY:* All rise.  Court is in recess.
2         (Recess at 8:57 a.m.)
3                      **REPORTER'S CERTIFICATE**
4      I certify that the foregoing is a correct transcript from
5    the record of proceedings in the above-entitled matter.  Dated
6    at Denver, Colorado, this 26th day of November, 2024.
7
8                                         *S/Tamara Hoffschildt*
                                           Tamara Hoffschildt
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25