Gravette Consulting LLC

Tim Gravette

126 Playfair Drive

Lafayette, Louisiana 70503

361-742-2500

I, Roy T. (Tim) Gravette have been retained as an expert in the matter of the *Martina Pena, individually, and As next best friend, of A.P., and Aristedes Pena, individually, and On behalf of the Estate of Alberto Pena v Starr County, Texas, Evelario Garza, and Ubaldo Suarez.* Case No: 7:22-cv-00276. United States District Court Southern District of Texas McAllen Division.

## Background and Qualifications

I am a twenty-year corrections veteran. Nine of my twenty years was as Associate Warden with the Federal Bureau of Prisons.

My career assignments included work as a Correctional Officer at the Federal Correctional Institution in Talladega, Alabama from June 1990 until October 1993. Lieutenant at the Federal Detention Center and the Metropolitan Correctional Center in Miami, Florida and Lieutenant at the Federal Correctional Institution in Estill, South Carolina. I was a Lieutenant from October 1993 until December 1997. I was a Captain at the Federal Detention Center in Oakdale, Louisiana and at the Federal Correctional Institution in Edgefield, South Carolina. My tenure as a Captain was from December 1997 until November of 2001. My assignments as Associate Warden were from November of 2001 until my retirement in June 2010. My assignments were at the Federal Correctional Institution Talladega, Alabama, the Federal Correctional Complex in Beaumont, Texas and at the Federal Correctional Institution in Three Rivers, Texas. During my assignment at the Federal Correctional Complex in Beaumont I was assigned to the medium security facility for two years, as the Associate Warden at the Central Administration Building for a period of five months and to the United States Penitentiary for my final seven months. When my career began as a Correctional Officer, I was assigned in the inmate housing units, as a compound patrol officer, and to various other duties assigned where I had direct supervision of the inmate population. As a Lieutenant, I would make rounds throughout the facility as part of my daily duties and interact with the inmate population in their assigned units, work assignments and leisure time activities. As my career progressed, I was promoted to Captain. During my time as a Captain, I was

responsible for the Correctional Officers daily duties and all other aspects of the safety, security, and orderly running of the facility.

As an Associate Warden, I had the responsibility to oversee and direct staff in the performance of their daily duties. I wrote and critiqued local policy and made decisions which affected the safety, security, and orderly running of the facility to which I was assigned. The policies were written using the principles of sound and proven correctional management, Federal law and standards provided by the American Correctional Association (ACA). I wrote lesson plans, taught classes, and wrote performance appraisals for our staff. I have commanded and been involved in incidents of emergency response for medical emergencies, inmate disturbances, hostage situations, assaults, suicides, homicides, and attempted escapes.

A copy of my Curriculum Vitae is attached as Exhibit A.

### Basis of Opinions

After a careful evaluation of the facts and circumstances that are known to me as a result of the review of the materials available (which are attached as **Exhibit B**), and taking into account my experience, training and knowledge of the practices that should be standard in all correctional facilities, I have formed several opinions, to a reasonable degree of certainty that are applicable to the correctional profession that relate to the care and supervision of Alberto Pena at the Starr County Detention Center on 08/13/2020. (SCDC) Pena was received at the SCDC at 3:16 pm and he was pronounced dead at a local hospital at 10:21 pm 7 hours later. The SCDC is located at 100 E 6th St, Rio Grande City, Texas.

As to the facts presented of which I am aware, I applied my experience and training and my twenty-year career as a corrections veteran concerning inmate culture, correctional investigative practices, sound correctional management, proper correctional environmental practices, inmate management and correctional administration experience in forming my opinions. I understand that additional information may be provided to me which may to some extent add to, change, or alter my opinions. I reserve the right to supplement my opinions and or this report based on any said additional facts or materials that may come forward after the scheduled expert disclosure date.

### Alberto Pena Death 08/13/2020

Alberto Pena arrived at the SCDC on 08/13/2020 at 3:16 pm. Pena was placed in a Detox Cell five minutes later at 3:21 pm. At 3:34 pm 13 minutes after being placed in the Detox cell Pena begins to intentionally strike his forehead into the metal door in his cell which has a window for observation made of

ballistic glass. (0136 Texas Rangers Report)  After this Pena hits his head again on the door two more times for a total of 3 times.  Following the 3 head strikes 3 DOs enter the Detox cell to calm Pena down without having him assessed by a medial professional.  The officers leave the cell and 54 minutes later a food tray is brought to Pena.  At 4:29 pm Pena was removed from the Detox cell and escorted to the booking area where per the jail records Pena was booked into the jail at 4:37 pm. (011)  At 5:03 Pena is returned to the Detox cell.  35 minutes later at 5:38 pm Pena struck his head 14 times on the Detox cell's door and fell to the floor. (See Photographs Exhibit C)  One minute later detention staff enter the Detox cell and find a dazed Pena on the floor and remove him from the cell.  Sergeant Lopez nudges Pena's hand with his foot.  The detention staff talk with Pena and Pena is allowed to walk out of his cell and get some water from the sink in the hallway.  Pena then returned to his cell.  Based on my training and experience this is the second time Pena should have been medically evaluated because he had been banging his head on the door and he was found on the floor and per DO Gonzalez Pena was "looking real dazed." (Gonzalez Memo 0239)  46 minutes later Pena again is hurting himself by punching the cell door with his right fist as he punches the door 5 times.  Pena then strikes the cell door with his right shoulder and then strikes the door with his right hand 4 more times.  Finally after Pena strikes the cell wall again with his hand detention officers enter the Detox cell to talk with Pena and then they left again without any medical intervention for Pena.  Note: 12 minutes had passed since Pena initially struck the cell door the first time with his hand.  Based on my experience and training the correctional staff had a duty to stop Pena from harming himself and at this point in the incident they had not.  Per the Texas Rangers investigative timeline they went in and talked with him which proved  to be ineffective in stopping Pena's aggressive and destructive behavior.  Nine minutes later Pena strikes the cells metal door with his left foot. Two minutes later detention officers enter the Detox cell with Pena and DO Javier Gonzalez sprays Pena with Oleoresin Capsicum spray. (pepper spray)  Pena is then removed from the Detox cell out into the hallway and taken to the floor by DOs Gonzalez and Garza as Sergeant Lopez looked on.  Pena was then placed in a WRAP restraint system which immobilized Pena and prevented him from moving about.  Pena was then placed into a rolling cart and placed in the cell where he could be observed by the cells camera and monitored in the Picket (control center) which had video monitoring capabilities.  Per the interview with DO Christina Gonzalez. (078)

I have found the use of force to place Pena in the WRAP system was unwarranted and excessive.  The detention staff had been in Penas cell on four occasions without incident and based on my review of the video everyone appeared to be cordial with Pena and he with them.  There was information received that Pena had been yelling threats that he was going to hurt DO Gonzalez.  DO Gonzalez explains in his memo (0239) how this all took place.  "At around 6:50pm I asked Sgt. Lopez if I could leave at 7 and said it was fine I could leave already.  So I proceeded to walk out and Sgt. Lopez was going to walk out with me.  As I was walking out of

facility I approached door 136 when I heard the intercom turn on, Officer A. Gracia #2919 advised Sgt. Lopez that inmate Pena threatened I officer J. Gonzalez saying he was going to "Hurt me", me when he gets out and yelling and cussing out "Bastardo" and "Pendejo". I immediately thought to myself if he wants to hurt me, he was going to hurt other officers as well, so I asked Sgt. Lopez what he was going to do, and we proceeded to use "The Wrap" for our officer safety and for his own safety as well since he had already hit himself about 15 times in the head before and was being very aggressive. We walked back in and I got the chair ready and placed it next to the detox cell. We got ready and I brought the OC canister for officer safety, as I approached the detox cell I gave him 3 verbal commands to stand against the wall with his hands behind his back, he was not complying and the detox door opened, I deployed the OC hitting only the left side of his body."

I would like to make some points about the Gonzalez memo and the actions of the staff after receiving this information from Officer Garcia. Gonzalez was on his way out the door going home. There was no immediate threat to him by Pena who was locked behind a steel door with no way to carry out any threats at that time. If in fact Pena was being aggressive to the point he needed to be controlled with OC Spray why would a reasonable and trained supervisor (Sergeant Lopez) allow Gonzalez to be in any way a part of the response and especially make him the point person with the chemical agent. Based on my review of the video I did not see a need to spray Pena with OC. First and foremost if you perceive an inmate is going to be aggressive don't open the door. The door had a food slot which is used to restrain inmates with handcuffs and it could have been used for that purpose instead of using force. Additionally, once restraints had been applied by Sergeant Lopez, Garza and Gozalez assisted Pena to his feet. Garza appeared to do this properly and Gonzalez grabbed Penas arm and aggressively pulled Pena to his feet. Once they were out in the hallway Gonzalez initiated taking Pena to the ground. Per Gonzalez's memo the following was the take down event: "As we approached the chair, I commanded him to get on his knees so we can wrap and place him safely. He was not following orders so as a detention officer and my training expertise, I placed my right foot in front of his legs and used necessary and proper force to place him on the ground while being assisted with Officer J .Garza." That is not the way I saw the take down on the video. It all happened quickly and I did not see any opportunity for Pena to get on his knees which wasn't even necessary. There was a metal bench a few feet away from where they were. Based on my experience if it was necessary to place him in the WRAP and he was not being combative why not sit him on the bench to apply the WRAP. That way no one is unnecessarily on the floor in a vulnerable position. When the WRAP was being applied DO Garza can be seen aggressively pulling on the straps in what appears to be an effort to tighten the restraints. Based on my experience applying restraint devices on inmates cranking down on them is not necessary to gain the desired effect on the inmate. I also observed Pena's actions prior to being sprayed by DO Gonzalez. Pena did not appear to be a threat to Gonzalez or the other 2 staff members as the

door opened and Gonzalez began to spray Pena. Pena had raised his hands above his head and was backing up from the approaching officers. (See Photographs Exhibit D) The entire event is suspect and based on my experience warranted further investigation.

It should be noted Pena was never decontaminated from the OC spray. It is routine and standard practice when chemical agents are used in correctional facilities and the person who was affected is decontaminated. The practice involves rinsing off the affected area on their body with water and they are provided with a clean set of clothes before being put back into their cell. It is also the standard practice to have the inmate assessed by a medical professional for reactions to the chemical agents and to have the medical professional check the restraint devices to insure they are not applied to tight or are hurting the inmate unnecessarily. Based on my review of the case documents and the video footage Pena was never seen by a medical professional during this incident.

The following is the Starr County Sheriff's Office policy for the use of Chemical Agents-Oleoresin Capsicum 5.02 dated 04/26/2010. (01998) The policy states the following about decontaminating a subject after they have been exposed to OC spray. Sprayed individuals are assisted in decontamination, as soon after the scene is secured as is reasonably possible. Exposed areas should not be bandaged but exposed to fresh air for evaporation. Flushing with water is also recommended. If a person exposed to OC or other chemical agents requests medical attention, the person must be accorded a medical inspection or examination by competent medical personnel, as soon as possible. The policy does address most of the needs for an inmate being sprayed with OC however it is evident the policy was written with a patrol officers duties in mind. An inmate who was strapped into a WRAP system like Pena does not have the ability to flush out his own eyes nor does an inmate jailed in a Detox cell have the ability to seek medical attention without the assistance of correctional staff. The staff who were responsible for Pena's care after he was exposed to OC spray failed to follow accepted standards and decontaminate him after he was exposed to the OC spray.

At 6:53 pm Pena is rolled back into the Detox cell restrained in a WRAP and sitting in a cart designed to be used for this purpose. At 7:48 pm Pena continues to move around squirming and ends up laying down almost entirely flat on the rolling cart. Pena has been in the WRAP for 55 minutes at this point. At 7:49 pm Two Detention Officers enter the Detox cell and re-position Pena in an upright position on the cart and put water on his eyes and forehead. At 8:05 pm Pena continues to squirm, breaks loose from the rolling cart, and falls onto the ground, still handcuffed behind his back. Pena scoots over to the cell door and kicks on the cell door with his restrained feet. (See Photographs Exhibit E) At 8:11 pm six minutes later Detention Officers

enter the Detox cell and secure Alberto back onto the cart. At 9:01 pm per the Texas Rangers timeline Pena stops moving in the Wrap and stops breathing. At 9:12 pm a DO observes foam on Pena's mouth. One minute later at 9:13 pm responding staff remove Pena from the Wrap restraint system and begin life saving measures. Pena was transported to the Starr County Memorial Hospital where he was pronounced dead at 10:12 pm by Luis Garcia, Justice of the Peace.

Below is the entire Texas Rangers investigative report timeline of events. (0136-0138)

- Approximately 2:44 PM-Alberto is arrested by Deputy Miguel Cervantes #155 for Criminal Mischief at 48 Fresno Circle Rio Grande City, Texas 78582
- Approximately 3:16 PM- Deputy Cervantes arrives at the county jail with Alberto.
- Approximately 3:21 PM- Alberto was placed in the detox holding cell by detention officers.
- Approximately 3:34:02 PM- Alberto intentionally strikes his forehead on the cell's metal door polycarbonate ballistic glass.
- Approximately 3:34:37 PM- Alberto intentionally strikes his forehead on the cell's metal door polycarbonate ballistic glass a second time.
- Approximately 3:34:55 PM- Alberto intentionally strikes his forehead on the cell's metal door polycarbonate ballistic glass a third time.
- Approximately 3:35 PM- Three Detention Officers enter the detox holding cell to calm Alberto down.
- Approximately 4:19 PM- A Detention Officer delivers a food tray to Alberto at the detox holding cell.
- Approximately 4:29 PM- Alberto is escorted out of the detox holding cell by a Detention Officer and taken towards the booking area.
- Approximately 5:03 PM- Alberto is escorted back to the detox holding cell by a Detention Officer.
- Approximately 5:38:40 PM- Alberto intentionally strikes his forehead 14 times on the cell's metal door polycarbonate ballistic glass.
- Approximately 5:39 PM- Detention Officers enter the detox holding cell and attend to Alberto, who appears dazed on the floor.
- Approximately 5:40 PM- Alberto is escorted out of the detox holding cell by Detention Officers.
- Approximately 5:41 PM- A Detention Officer escorts Alberto back into the detox holding cell. Alberto is walking and appears to be conscious.
- Approximately 6:27 PM- Alberto continues with his aggressive behavior and strikes the cell's metal door polycarbonate ballistic glass five times with his right fist. Alberto then gets into a fighting stance with clenched fists as he appears to be waiting for Detention Officers to enter the cell.
- Approximately 6:33 PM- Alberto aggressively strikes his right shoulder against the cell's metal door.
- Approximately 6:38 PM- Alberto intentionally strikes the cell's metal door four times with his right hand.
- Approximately 6:39 PM- Alberto intentionally strikes the cell's wall once with his hand. Detention Officers enter the detox holding cell and continue to talk to Alberto. Detention Officers exited the detox holding cell.

- Approximately 6:48 PM- Alberto intentionally strikes the cell's metal door with his left foot as his body language appears to be very upset and aggressive.
- Approximately 6:50 PM- Detention Officers enter the detox holding cell, and one Detention Officer sprayed Alberto's left side of the face with Oleoresin Capsicum or OC Spray. Alberto kneeled on the ground and was handcuffed by Detention Officers. Alberto is escorted out of the detox holding cell.
- Approximately 6:53 PM- Detention Officers escort Alberto back to the detox holding cell in a WRAP Restraint System rolling cart. A detention officer places the rolling cart towards the center of the cell in front of the internal camera. Alberto's ankles, legs, and chest area are restraint, and both hands are handcuffed behind his back. Alberto remains in this position squirming his body to break loose.
- Approximately 7:48 PM- Alberto continues to move around squirming and ends up laying down almost entirely flat on the rolling cart.
- Approximately 7:49 PM- Two Detention Officers enter the detox holding cell and re-position Alberto in an upright position on the rolling cart, and put water on his eyes and forehead.
- Approximately 8:05 PM- Alberto continues to squirm, breaks loose from the rolling cart, and falls onto the ground, still handcuffed behind his back. Alberto is rolling around on the cell's floor, attempting to get up but can not.
- Approximately 8:11 PM- Detention Officers enter the detox holding cell and secure Alberto back onto the rolling cart.
- Approximately 8:18 PM- A Detention Officer provides water to and Alberto, then all Detention Officers exit the detox holding cell. Alberto continues to squirm, moving his body from side to side.
- Approximately 8:51 PM- A Detention Officer escorts Alberto's cousin, Edgar Pena (Inmate), to the detox holding cell's metal door window. The purpose of the visit is to have Edgar talk to Alberto to calm Alberto down and cooperate with Detention Officers.
- Approximately 9:01 PM- Alberto stops moving and breathing while restrained to the WRAP rolling cart.
- Approximately 9:12 PM- Detention Officer checks on Alberto and observes foam on Alberto's mouth.
- Approximately 9:13 PM- Detention Officers enter the detox holding cell and attend to Alberto. Alberto is removed from the WRAP rolling cart, and Detention Officers begin Cardiopulmonary Resuscitation (CPR) First Aid.
- Approximately 9:25 PM- Rio Grande City Fire Department (RGCFD) arrives at the jail to assist with first aid.
- Approximately 9:28 PM- Emergency Medical Services (EMS) Paramedics (Jesus Gonzalez and Olga Falcon) arrive at the county jail to assist. Alberto is placed on a stretcher.
- Approximately 9:34 PM- The detox holding cell metal door is closed, and the video ends. Alberto is transported to Starr County Memorial Hospital in Rio Grande City.
- Approximately 10:12 PM- Alberto Pena's time of death at the hospital by Justice of the Peace Luis Garcia Pct. # 8

Based on my review of the case material and the incident video surveillance footage the SCDC correctional staff failed to provide any type of medical intervention for Pena during the 6 hours he was at the

facility.  Note: a male wearing gray scrubs with glasses and a stethoscope around his neck was observed coming into the Detox Main Hallway and walking by the Detox cell at 5:29 pm two hours and 13 minutes after Pena banged his head in the patrol car enroute to the SCDC and two hours and 55 minutes after Pena struck his head on the Detox cell door the first time. (Camera 4)  Pena banged his head in the Deputy's car during transport and continued to bang his head on the door inside the Detox cell.  There was force used against Pena by correctional staff including spraying him with pepper spray and taking him to the floor in front of the Detox cell prior to placing Pena in the WRAP restraint system.  Yet, there is no evidence of any medical assessments or intervention for any of the events which based on sound correctional management and accepted standards require medical attention for the type of events described above.  I will address each of these events separately in this report to show a lack of medical attention for Pena prior to his death.

## Texas Commission on Jail Standards

The State of Texas has specific standards for correctional facilities monitored by the Texas Commission on Jail Standards.  One of those standards 273.6 Restraints is specifically applicable to the treatment of Pena at the SCDC on 08/13/2020.

The State of Texas Commission on Jail Standards (TCJS) Rule 273.6 Restraints.   states:

1. The Decision to apply restraints shall be made by supervisor or medical personnel.  Appropriate staff should assess the inmate's medical condition.
3. A documented observation of the inmate shall be conducted every 15 minutes, at a minimum. The observations should include an assessment of the security of the restraints and the circulation to the extremities.
4. The inmate should receive medical care a minimum of every 2 hours, to include changing position, exercising extremities, offering nourishment and liquids, offering toilet facilities, checking for medication needs, and taking vital signs. These checks shall be documented.
5. Documentation of use of restraints shall include, but not be limited to the following: the events leading up to the need for restraints, the time the restraints were applied, the justification for their use, observations of the inmate's behavior and condition, the 15-minute checks and the time the restraints were removed.

Based on the above information Sergeant Lopez did not adhere to the TCJS standard and have medical staff assess Pena's medical condition.  Neither did Sergeant Lopez have a trained medical professional evaluate the WRAP system placement following Pena being placed in the WRAP.  Sergeant Lopez and Sergeant Garza did not ensure Pena was being observed at a minimum every 15 minutes.  Nor was the WRAP system checked to ensure Pena's extremities were getting proper circulation.  SCDC failed to have Pena evaluated by a medical professional every 2 hours as required by TCJS standards.  Pena was placed in the WRAP system at 6:53 pm and he was found unresponsive at 9:12 pm a period of 2 hours and 19 minutes which allowed ample time for a

check by a medical person within the allotted 2-hour period. Lastly based on my review of the case material and the video footage The Wrap Log (0156) was falsified when DO Barerra entered into the document at 7:02 and 7:22 pm he conducted a visual check and Pena was awake and moving. I observed those 2 checks by Barerra on the video and he did go to the cell door and enter the wand into the switch and turn it but he did not look into either the cell door window or the observation window at Pena. He kept going to the next cell on his left on both occasions. I observed Barrera's movements using 2 camera angles. (Camera 4 and Detox Main)

An inspection of the SCDC was conducted on 09/25/2020 by the Texas Commission on Jail Standards. The inspector was TCJS Inspector Jennifer Shumake. During the inspection the following was noted and was listed as an area of noncompliance. 273.6 Comments: A documented observation of the inmate shall be conducted every 15 minutes, at a minimum. The observations should include an assessment of the security of the restraints and the circulation to the extremities. **Face-to-face observations were not conducted within 15 minutes as required at the time Inmate Alberto Pena was found unresponsive in the WRAP restraint system.** Other comments from Inspector Shumake's report include the explanation of her findings:

While reviewing the face-to-face observations of Inmate Alberto Pena, who was booked into the Starr County Jail on August 13, 2020, at approximately 3:31PM, this inspector observed that he was placed into the Wrap Restraint System at 6:53PM. Face-to-face observations were conducted within fifteen (15) minutes as required by minimum jail standards until 8:11 PM, which was one (1) minute late. The next observation was conducted at 8:38PM which was (12) minutes late. The next observation was conducted at 8:51PM, which was thirteen (13) minutes late. The final face-to-face observation was conducted at 9:12PM, which was six (6) minutes late. It was during this last observation that the inmate was found unresponsive and CPR was started. Inmate Alberto Pena was subsequently pronounced deceased at the hospital. This inspector recommended that the administration implement a plan of action to ensure that all jailers are properly trained on how to conduct and document face-to-face observations of inmates in restraints as required by minimum jail standards. Furthermore, the administration will ensure that roster training is conducted.

Per this inspection and my observation of the video footage not only were the wellbeing check not always done in a timely manner some were not done at all and the log was falsified to indicated the checks were done properly.

**Present Opinions:**

Based upon my knowledge, education, training, and years of experience working as a correctional professional, it is my unequivocal opinion the lack of proper medical intervention and the failure to properly follow correctional standards and practices contributed to the decline in the condition of Pena at SCDC. Pena was only at the SCDC for 6 hours and in those 6 hours he abused himself by striking his head so loudly against the door the noise could be heard by DO Joel Garza who was not in the Detox cell area at the time. (050) DO Garza and DO Javier Gonzalez spoke with Pena about hitting his head and told Pena he could not be doing that. Pena told Garza he wanted to make a call to his son and Garza told Pena to act right and they would allow him to call his son, yet neither DO Garza nor DO J. Gonzalez requested any type of medical intervention for Pena. There were numerous correctional staff who were in contact with Pena during the 6 hours he was at the SCDC. Sergeant Hector Lopez, Sergeant Evelario Garza, Detention Officers Javier Gonzalez, Joel Garza and Jesus Barrera were the staff who based on my review of the video footage and the case documents had ample opportunity to provide medical intervention for Pena but did not. Pena was allowed to scoot around on the cell floor while restrained in the WRAP for 6 minutes. To give an example of how long 6 minutes is that is the equivalent of 2 rounds in a boxing match. That is how long it was before anyone responded to his cell to check on him. The reason for placing Pena facing the cell door and the camera was so he could be observed by the DO in the Front Picket via video feed. This is in addition to the required 15-minute welfare checks yet he got out of the cart scooted across the floor and managed to get into a position to actually kick the cell door while still in the WRAP restraint system. I find this lack of inmate supervision by the responsible staff to be indifferent to the wellbeing of Alberto Pena. Pena was a troubled inmate who required extra care and supervision. Based on my years of experience I would have expected reasonable and trained correctional professionals to provide the needed care and compassion yet they did not.

Exhibit B of this report identifies the information I reviewed in order to form my opinions in this case. Additionally, I have received all documents produced by both parties in this case to date. I reserve the right to amend or modify my opinions should additional information become available, including but not limited to any deposition or other testimony given by any Defendants, any fact witnesses they provide, or any expert witnesses they provide.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 7th day of December 2023.

*R. Tim Gravette*

**<u>Compensation</u>**

Research, preparation, and report writing:     $250.00 per hour

Deposition and Court Time:                     $300.00 per hour

A $1200.00 minimum payment is required prior to the start of a deposition.

Travel is billed at actual costs with mileage being at the current rate set by the IRS.

## Prior Cases in Which I Have Testified as an Expert Witness in a Deposition and/or at Trial

**I have testified as an expert at trial within the proceeding four years in the following cases:**

- *DeWayne Bearchild v Larry Pasha*. Case No. 6:14-cv-00012-DLC United States District Court for the District of Montana Helena Division.
- *United States v Alex Castro and Jason Kechego* Case No. 21-cr-20409 United States District Court Eastern District of Michigan Southern Division.
- *Leinette Kainoa Reyes; Dana K.A. Baba; Darnell K. Maluyo; Artemio Panlasigui, Individually and as a Personal Representative of the Estate of Dawnielle C. Panlasigui, deceased, and as Next Friend to A.P. a minor; Tiana M. Soto; Maelene Cruz; Monica J. Alves Peralto; Shawn l. Tallman; Reyna M. Banks; and Victoria Saunoa-Piper v. State of Hawaii; Nolan Espinda; Eric G. Tanaka; Chavon Freitas; Taofi Magalei, Jr.; Brent Baumann; Gauta Vaa; James Sinatra; John Does 1-25; Jane Does 1-25; and Does Entities 1-25.* United States District Court for the District of Hawaii. Civil No: 1:17-cv-00143-JAO-RT.
- *USA v. Christopher Ruiz*, United States District Court for the Central District of California. Case No. ED CR 18-00250-CJC
- *USA v. Charles Kertesz*, United States District for the Central District of California. Case No: 5:20-cr-00012-JGB

**I have testified at deposition within the proceeding four years in the following cases:**

- *Warren R. Harris v. Muriel E. Bowser, Tanya A. Royster, Mark J. Chastang and Quincy L. Booth*. Case No. 1:18-cv-00768-CKK pending in the United States District Court for the District of Columbia.
- *Ameka Riddick, Administrator of the Estate of Pamela Renee Riddick, The Decedent, deceased v. William Watson, Individually and as Sheriff for the City of Portsmouth, et al*. United Sates District Court for the Eastern District of Virginia Norfolk Division. Case No. 2:19-CV-00363.
- *Ruben Castillo, Plaintiff v C.O. Jeremiah Vance, The West Virginia Regional Jail Authority and The West Virginia Division of Corrections*. Pending in The Circuit Court of Kanawha County, West Virginia. Civil Action No. 16-C-187.
- *Arthur Brewington v. Don Reynolds, in his official capacity as Sheriff of Laurens County Sheriff's Office; Corporal John Przybylo; Sergeant Corey Matthew Barnes*. United States District Court District of South Carolina. Case No. 0:19-2903-DCN-PJG.
- *Leinette Kainoa Reyes; Dana K.A. Baba; Darnell K. Maluyo; Artemio Panlasigui, Individually and as a Personal Representative of the Estate of Dawnielle C. Panlasigui, deceased, and as Next Friend to A.P. a minor; Tiana M. Soto; Maelene Cruz; Monica J. Alves Peralto; Shawn l. Tallman; Reyna M. Banks; and Victoria Saunoa-Piper v. State of Hawaii; Nolan Espinda; Eric G. Tanaka; Chavon Freitas; Taofi Magalei, Jr.; Brent Baumann; Gauta Vaa; James Sinatra; John Does 1-25; Jane Does 1-25; and Does Entities 1-25.* United States District Court for the District of Hawaii. Civil No: 1:17-cv-00143-JAO-RT.
- Nichole Morrison as Administrator for the Estate of Roberto Grant and as Mother and Legal Guardian for the Property of SG and AG, Decedents Minor Children v United States of America, Federal Bureau of Prisons, Executive Assistant Lee Plourde, Correction Officer Kern and John and Jane Doe(s) Agents and Employees of the Defendants. United States District Court Southern District of New York. Case No: 17 Civ. 6779 (WHP).

- Stacy Willis, as Personal Representative of the Estate of Mitchell Everett Willis, deceased v Oklahoma County Detention Center, et al. United States District Court Western District of Oklahoma Case No. 5:18-cv-00323-D

- James Delaney v. William Romero in his individual capacity. United States District Court for the District of Colorado. Civil Action No. 1:20-cv-2964.

- *Christine Parker, Individually and as Administrator of the Estate of Teddy Parker v Smith County Texas, City of Tyler, Texas, Raquel Rodriguez, Individually, Leonel Hernandez, Individually, Shawn Jones, Individually, Jose Iglesias, Individually, Zane Lucas, Individually, Brandon Lott, Individually and Joshua Smedley, Individually.* United States District Court Eastern District of Texas Tyler Division. Case No. 6:19-CV-00212.

- *Estate of Patrick A. Regan, by Donna Hogle, as Administrator of the Estate, and on behalf of the survivors, Donna Hogle, Robert Regan, Derek M. Regan, Riley Regan, and H.R., a minor v. John Baldwin, as Director of Corrections, WEXFORD Health Sources, INC., a Foreign Corporation, Linda Duckworth, in her individual capacity, Stephen Lanterman, in his individual capacity, Kelly Haag, in her individual capacity, Dr. Rezwan Khan, in his individual capacity, Susan Prentice, in her individual capacity, Taylor Cool, in her individual capacity, and Christian Bolte, in his individual capacity.* United States District Court District for the Central District of Illinois Peoria Division. Case No. 1:17-CV-01059-JBM-JEH.

- *Deanna Wilson v Clallam County; W.L. "Bill: Benedict, in his individual capacity; Wendy Peterson, in her individual capacity; Howard Andrew Blair, and John Does 1-5, in their individual capacities.* United States District Court Western District of Washington at Tacoma Case No. 3:19-cv-06105-RSM-TLF.

- *Adrian Deshun Delk v CoreCivic d/b/a "Hardeman County Correctional Facility," Warden Grady Perry, Danita Woods, Tomicka McKinnie, Columbus Molone, and Latoya Loudon.* United States District Court for the Western Section of Tennessee Western Division Case No. 16-1285-JDB-cgc.

- *Billie Taylor v West Virginia Division of Corrections and Rehabilitation (WV Regional Jail and Correctional Authority); and John Does, unknown employees or agents of the entity.* Circuit Court of Kanawha, West Virginia. Civil Action No. 20-C-1022. Judge Jennifer Bailey

- *Jerry Lawler, as father, next friend and Personal Representative/Administrator of the Estate of Brian Christopher Lawler, deceased v. Hardeman County, Tennessee; John Doolen; Leonard Brown; Ellen Futrell; William Gonzalez; and Judy Wiggins.* United States District Court for the Western District of Tennessee Eastern Division. Case No. 1:19-cv-01174-STA-tmp.

- *Leonite Irving v. District of Columbia a Municipal Corporation.* Case No.2020-CA-001777 B pending in the Superior Court of the District of Columbia, Civil Division.

- *Robin Bailey, as the Personal Representative of the Estate of Zachary A. Bailey v. West Virginia Division of Corrections and Rehabilitation, Joseph Wood, in his individual capacity and as an employee and agent of the above entity, John/Jane Doe, unknown employees or agents of the above entity, in their individual capacities, and as employees or agents of the above entity. Brian Keith Ricardson, M.D., Jane Doe Employer, unknown employer of Brian Keith Richardson, M.D., upon an imputed liability cause of action, and Primecare Medical, of West Virginia, INC.* Circuit Court of Kanawah County West Virginia. Civil Action No. 19-C-1163.

- *Gwynne Cheek, individually and as independent administrator of, and on behalf of, the Estate of David Brian Keith Braddock, and David Brian Keith Braddock's heirs-at-law, v. Hill County, Texas, Dana J. Allen, Kyle R. Cox, Billy J. Olson, Jr. and Mamie D. Reece.*; Cause No. 6:21-CV-00396-ADA-JCM; in the United States District Court for the Western District of Texas, Waco Division.

- *Shonnica Anderson, individually and on behalf of the Estate of Marcus Hayes v. Georgia Department of Corrections; Gerald walker; Shallumar Smith; and Davy Crockett, Defendants.* State Court of DeKalb County State of Georgia. Civil Action No. 21A02534
- *Jose Trejo, individually and as a successor in interest to Jose Banda Pichardo; Susana Banda, individually and as successor in interest to Jose Banda Pichardo; and Jose Trejo and Susana Banda, as co-representatives of the Estate of Jose Banda Pichardo v. County of imperial, Raymond Loera, California Forensic Medical Group and DOES 2-10, inclusive, and R. Banda, a minor (nominal defendant)* Case No. 20-CV-1465 LAB (MSB) United States District Court Southern District of California.
- *Stephen Eichelkraut v. Grundy County Correctional Officers Kiley Jungles, Michael Weitzel, Rhae Wise, Brandon Hardy, Daniel Barrins, David Obrochta, Kimberly Lear, John Mixen, and Ken Briley, in his official capacity as the Sheriff of Grundy County, and Grundy County.* Case No. 21-cv-2528 United States District Court for the Northern District of Illinois Eastern Division.
- *Kathy T. Branham, Individually and as Personal Representative of the Estate of Vernon Dean Branham vs. Southern Health Partners, Inc., Charles Outz, MD, Fairfield County Sheriff's Office, Fairfield Memorial Hospital, and University of South Carolina.* State of South Carolina in the Court of Common Pleas. CIA No.: 2019-CP-20-00286
- *Heather Diodene v. Marlin L. Gusman, Sheriff of Orleans Parish, Deputy Justin Andrews and Sergeant Chris Rubio.* Case No. 2:21-cv-00491-GGG-KWR. United States District Court for the Eastern District of Louisiana.
- *Eric Devone Cater, an Incompetent Person, by and through Timothy Cater, Guardian as Natural father and, Eric Devone Cater Individually, and Timothy Cater, Individually v Arkansas Department of Correction, et al.* United States District Court Eastern District of Arkansas Pine Bluff Division. Case No. 5:18-CV-00047-DPM.

## Exhibit A

Curriculum Vitae

Tim Gravette

ROY T. GRAVETTE (TIM)

126 Playfair Drive, Lafayette, Louisiana 70503 | 361-742-2500 | tim@gravetteconsulting.com

EDUCATION

Federal Law Enforcement Training Center

Glynco, Georgia

| | | |
|---|---|---|
| • | Introduction to Correctional Techniques (112 hours) | 1990 |
| • | Firearms/Self Defense (32 hours) | 1990 |
| • | Spanish Immersion for Law Enforcement Officers (141 hours) | 1992 |
| • | Training for Trainers for Side Handle Baton Instructors (26 hours) | 1994 |

Federal Law Enforcement Training Center

Artesia, New Mexico

Prisoner Transportation and Bus Transportation Training (80 hours)          1993

Federal Bureau of Prisons Management Training Center

Aurora, Colorado

| | | |
|---|---|---|
| • | New Lieutenant Training (76 hours) | 1995 |
| • | Advanced Lieutenant Training (72 hours) | 1995 |
| • | Special Investigative Supervisor Training (64 hours) | 1997 |
| • | New Captain Training (40 hours) | 1998 |
| • | CORE Skills Training (40 hours) | 1998 |
| • | Discipline Hearing Officer Training (52 hours) | 1998 |
| • | New Associate Warden Training (36 hours) | 2001 |
| • | Public Speaking and Media Relations (36 hours) | 2002 |
| • | National Incident Management Training (36 hours) | 2007 |

Miami-Dade Community College

Miami, Florida

Arson and Crime Scene Photography/Documenting Domestic Violence          1995


National Crisis Prevention Institute

Milwaukee, Wisconsin

Instructor Certification          1996

Federal Bureau of Prisons Employee Development Center

Washington, D.C.

Leadership Forum (40 hours)          1997


National Institute of Corrections

Longmont, Colorado

Correctional Leadership Development          2003

Management Development Center

Denver, Colorado

Strategic Leadership: Leading Culture Change and Building Performance Based Organizations
          2005


Offices of the United States Attorneys

The National Advocacy Center

Columbia, South Carolina

Prison Rape Elimination Act Certification Training          2013


De-Escalation – What Does This Mean?

Use of Force Policy Development and Training Standards

Webinar Daigle Law Group Eric P. Daigle          2018


OTHER TRAINING

- Safety Cross Development Course          1991
- Annual Correctional Refresher Training          1991-2010
- Correctional Services Cross Development Course          1992

- Computer Security 1992
- Hostage Survival Skills 1993
- Stun Munitions 1993
- Case Management 1998
- Financial Management 1999
- Religious Services Cross Development 2000
- Suicide Assessment and Management 2001
- Employee Services Cross Development Course 2002
- Psychology Services Cross Development Course 2002
- Human Resource Cross Development Course 2002
- Labor Management 2002
- FEMA Emergency Management Training 2007
- Prison Rape Elimination Act Auditor Training 2014

AWARDS

Norman A. Carlson Award 2000

Supervisor of the Year 2000

Excellence in Operational and Program Review 2000

Specialized Experience

Disturbance Control Squad Member

Disturbance Control Squad Leader

Special Operations Response Team Member

Special Operations Response Team Leader

Special Operations Response Team Commander

TEACHING EXPERIENCE

Federal Bureau of Prisons

Instructor for General Classes 1993-2009

Instructor for the following classes during annual training sessions: Terrorism both Domestic and Foreign, First Responder, Key Control, Security Procedures and Report Writing.

Instructor PR-24 Side Handle Baton                                1994-1995

Conducted training classes and certified correctional staff in the proper use of a side handle baton and use of force techniques.


Instructor Nonviolent Crisis Intervention                         1995-1996

Conducted training for staff in the standards for crisis prevention and intervention training.  This training provided staff with the skills to safely and effectively respond to anxious, hostile, or violent behavior while balancing the responsibilities of care.


Instructor Use of Deadly Force                                    1998-2001

Conducted training for all institution staff in the use of deadly force.


Instructor Ethics                                                 2002-2009

Conducted training for all staff during annual training sessions in policies related to ethical behavior both in the workplace and outside activities.


RELATED EXPERIENCE

Litigation Consultant

Gravette Consulting LLC                                           2010 - Present

As a Litigation Consultant, I provide litigation support and expert witness testimony.  I have the responsibility to review and analyze case materials to include written reports, video footage and if available recorded phone conversations.  I assist the attorney client with deposition and trial preparation focusing on discovery and evidence.  I prepare a written report of opinions I have formulated from research and materials provided for each case.  Inmate standards of care and conditions of confinement are a central focus point of my work and preparation.


I have been involved in cases on the Federal, State, Parish, and County levels.  My years of experience as a correctional professional has led to cases ranging from homicides, suicides, assault, and death in custody.  I have prepared Federal Rule 26 reports and provided deposition testimony.   I have provided expert testimony in Federal Court and have been qualified in the following areas: prison culture, Bureau of Prisons policy, prison homicide and investigations, prison staffing and policy, inmate behavior and comparative disciplinary records.  Attention to the details of each case and interpretation of policy is utilized as the basis for my opinions.

Subject Matter Expert

Creative Corrections                                              2012 - 2014

I was employed as a Subject Matter Expert in the field of corrections for Creative Corrections in Beaumont, Texas.  I conducted Office of Detention and Oversight (ODO) audits for the United States Immigration and Customs Enforcement Office of Professional Responsibility.  I was involved in four to five audits per year during my tenure with Creative Corrections.  I would go with a team of other subject matter experts and review a facility's overall operation and physical plant layout.  The audits were completed utilizing Performance Based National Detention Standards.  Of the areas I have been assigned during the audits, I have reviewed and documented facilities' compliance in Use of Force and Restraints, Special Management Units, Food Service Operations, Classification System, Staff-Detainee Communication, and Sexual Abuse and Assault Prevention and Intervention.


Contract Special Investigator

KeyPoint Government Solutions                                     2011 – 2014

As a contract special investigator, I conducted background investigations in support of national security, focusing on casework for the Office of Personnel Management (OPM).  My primary duties included conducting background investigations for determining employment suitability of persons who require access to sensitive or classified U.S. Government information.  I conducted face-to-face interviews with the subjects and his/her neighbors, employers, friends, and family.  I also performed records searches at law enforcement agencies, courthouses, educational institutions, financial institutions, and medical/mental health facilities.  Following the interviews and records searches, I provided written reports to the Office of Personnel Management which were used for official purposes.


Prison Rape Elimination Act Auditor                              2015-2018

I am a certified Prison Rape Elimination Act (PREA) Auditor for Adult Facilities by the United States Department of Justice.  I completed a one-week intensive certification class at the National Advocacy Center in Columbia, South Carolina.  I am available to assist with the certification process and complete the required audit process for Adult Facilities as directed by the PREA Resource Center utilizing the standards and guidelines required to meet the standards and laws of the Department of Justice.


Motion Picture Industry Consultant                               2015

I consulted on production of the motion picture Trumbo, filmed in New Orleans, Louisiana.  The film was directed by Jay Roach and starred Brian Cranston, John Goodman, Helen Mirren, and Diane Lane.

The film was nominated for an Oscar and other prestigious awards. I assisted the production personnel with costumes and prison dialog. I also wrote the scene in the movie of the searching of Trumbo when he was processed into the prison. I was on location during the filming to assist with prison related scenes and to help with the actions of the extras involved in the prison scenes.

Federal Bureau of Prisons                                                          1990 – 2010

During my career with the Federal Bureau of Prisons, I served as a correctional officer, a GS-9 lieutenant, a GS-11 lieutenant, a GS-12 captain, a GS-13 captain, and an associate warden. My assignments have been at eight different locations at varying security levels including administrative facilities, four medium security facilities, federal detention centers, and two high security facilities in locations across the southern United States. My primary duties dealt with the safety, security, and orderly running of the institutions which included the oversight of internal audits and preparation for program review visits, American Correctional Association visits and institution character profile visits. My association with the American Correctional Association has been on six different occasions. I have participated in program review visits as an auditor and have accompanied my regional director on two occasions on institution character profile visits. I have been involved in numerous incidents of inmate violent behavior and emergency situations over the span of my career. I have been the on-scene commander for inmate disturbances and riots and have responded to medical emergencies and acts of violence ranging from assaults to homicides. I have been a member of after-action review teams and participated in mortality reviews.

Correctional officer at a medium security institution from 1990-1993.

GS-9 and GS-11 lieutenant at two administrative facilities from 1993-1995.

GS-11 lieutenant at a medium security facility from 1995-1997.

GS-12 captain at an administrative facility from 1997-1999.

GS-13 captain at a high security institution from 1999-2001.

I was assigned as an associate warden at three facilities from 2001-2010. During these assignments, I was responsible for several areas of the institutions and the program and operational reviews for those departments. I completed the yearly reviews of our local policy and continued to monitor changes in national policy as it affected the changes we needed to make to our local policy. I was tasked with being the re-accreditation manager for our American Correctional Association visits at two of the assignments. I utilized my experience and knowledge of national and local policy as well as the mandatory standards

for correctional institutions as set forth by the American Correctional Association to prepare our facilities for the visits. Along with a team of staff I made numerous inspections and walk-thru visits of all the areas of the institution. I noted areas of concern and made on-the-spot corrections. I was selected to participate in an institution character profile review at another institution by my regional director. This process is similar to a program review, which involves touring the entire facility and noting issues which are to be included in the final report. I have also been utilized as an investigator over the course of my career. I have been involved in investigations of staff misconduct and criminal investigations ranging from assault to homicides. I have attended training in Denver, Colorado for investigation and crime scene management. I have worked with other agencies to include the Federal Bureau of Investigations, the United States Marshals Service, and the Office of Inspector General in criminal investigations of both staff and inmates. I also conducted investigations for the Federal Bureau of Prisons working closely with the Office of Internal Affairs.

## SPEAKING ENGAGEMENTS

I have made public speaking appearances which included the 16th annual Criminal Justice Act Panel Training and Seminar hosted by the Federal Public Defenders Office in Lafayette, Louisiana, and the Lafayette Bar Association CLE program. My topic was The Prison Investigative Process and Your Client. The presentation included insights into prison culture and inmate behavior, the investigative process in a correctional setting, and inmate classification issues which include protective custody, high profile inmates, and the influence of prison gangs on the day-to-day operation of a prison.

## MEMBERSHIPS

American Correctional Association
Louisiana Sheriffs' Honorary Membership Program
Louisiana Correctional Association

**Exhibit B**
**Materials Reviewed**

1. Complaint filed 08/12/2022
2. Texas Commission on Law Enforcement Personal Status Report Evelario Gonzalez
3. Texas Commission on Law Enforcement Personal Status Report Javier S. Gonzalez
4. Texas Commission on Law Enforcement Personal Status Report Javier A. Gonzalez
5. Texas Commission on Law Enforcement Personal Status Report Hector Lopez III
6. Texas Commission on Law Enforcement Personal Status Report Ubaldo Suarez
7. Starr County TCJS Inspection Report dated 09/25/2020
8. Starr County TCJS Re-Inspection Report dated 12/28/2020
9. Alberto Pena Investigation File (001-0733) The file includes staff written statements, the Texas Rangers Investigative Report, Photographs, the Autopsy Report, SCDC inmate information for Pena and log sheets indicating staff interaction with Pena.
10. Incident Video Surveillance Footage (Camera 4, Detox Main and Detox Main 2 which was the camera inside of the Detox Cell)
11. Internet Search WRAP Restraint System
12. Texas Commission on Jail Standards Internet Search

**Exhibit C**

Pena bangs his head on the cell door 14 times in a row and then falls to the floor.





**Exhibit D**

Pena with his hands up as he was about to be sprayed with OC by DO Gonzalez.



Pena putting his hands behind his head and being sprayed with OC 1 second later.



**Exhibit E**

Pena has managed to get out of the WRAP cart and is on the floor.



Pena scooted across the floor and made it to the cell door and he kicked at the cell door while wearing the WRAP System.

